PER CURIAM.
¶1 Corey R. Pittman appeals a judgment of conviction for possessing a firearm as a felon and as a repeater. See WIS. STAT. §§ 941.29(1m)(a), 939.62(1)(b) (2017-18).[1] The issue on appeal is whether police officers lawfully seized and frisked him. They did. Therefore, we affirm.
I. BACKGROUND
¶2 The State charged Pittman with one count of possessing a firearm as a felon and one count of carrying a concealed weapon, both as a repeater. According to the complaint, the charges stemmed from two police officers' encounter with Pittman at a gas station. Pittman had a gun in his sweatshirt pocket.
¶3 Pittman moved to suppress the evidence and argued that the officers lacked reasonable suspicion to seize and frisk him.
¶4 At the suppression hearing, one of the officers who was present at the scene testified to the events that led to Pittman's arrest and the charges against him. The officer said that on the night of Pittman's arrest, he and his partner were assigned to "violent crimes, saturation patrol." He explained that their duties included: patrolling their district; responding to reports of gunshots, subjects with guns, and armed robberies; and conducting field interviews and traffic stops to try to prevent those incidents.
¶5 According to the officer, he and his partner drove down a Milwaukee street around 11:00 p.m., and saw a man, later identified as Pittman, standing at a gas station paying close attention to their squad car. The officer said he found that behavior unusual, and his partner turned the squad car back toward the gas station but did not turn the lights or siren on. As they pulled up next to the gas station, the officer saw the man make "a stutter step motion to his left, to the north." The officer testified: "I've been in numerous foot pursuits throughout my career. And based on my experience with that, I believed at that point he was going to take flight from us."
¶6 Pittman, however, did not run, and the officers got out of their car to talk to him. The officer testified that "the first thing I observed was [that the man] had a bulge protruding out of his front hooded sweatshirt pocket." The officer relayed that "at that point I was moving a little bit to the north in order to make sure he could not run away, where he first made that stutter step." The officer believed his partner then asked Pittman "if he had any guns on him" and Pittman said he did not. By this time, the officer recalled that he was standing slightly north of and approximately fifteen feet away from Pittman. The officer could see the handle of a black handgun sticking out of Pittman's front pocket.
¶7 The officer then grabbed the handle of the gun, at which point Pittman acknowledged he had it, but claimed he had a permit. Pittman told the officers his name was A.S. The officer checked the name and found that A.S. had a valid concealed carry permit. However, the officer testified that the photo of A.S. looked nothing like Pittman.
¶8 The officer eventually learned Pittman's real name and placed him in handcuffs. The officer testified that Pittman was never told to stop or patted down and was only placed in handcuffs after the officers learned he was not A.S.
¶9 The circuit court found the officer's testimony credible and denied the suppression motion. Pittman then pled guilty to possessing a firearm as a felon and as a repeater. The concealed weapon charge was dismissed and read-in for purposes of sentencing. The circuit court accepted Pittman's plea and sentenced him to three years of initial confinement and three years of extended supervision, to run consecutively to Pittman's revocation sentence in another case.
¶10 Pittman now appeals the circuit court's denial of his suppression motion.
II. DISCUSSION
¶11 We apply a two-step standard of review to the denial of a motion to suppress evidence. See State v. Lonkoski , 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. "We uphold the circuit court's findings of fact unless they are clearly erroneous. We then review de novo the application of the facts to the constitutional principles." See id. (citation omitted).
¶12 Pittman contends that there was no reasonable suspicion to support his seizure, which he further contends occurred when the officers stepped out of their vehicle and approached him in "a manner to corner" him. We disagree as to both of these contentions.
¶13 Under the Fourth Amendment of the United States Constitution, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Wisconsin Constitution contains the same language, and we generally have applied our state constitutional protections in the same way as the United States Supreme Court has applied the protections under the Fourth Amendment. See State v. Kramer , 2009 WI 14, ¶18, 315 Wis. 2d 414, 759 N.W.2d 598.
¶14 The protections against unreasonable seizures have bearing only when a government agent "seizes" a person. State v. Young , 2006 WI 98, ¶23, 294 Wis. 2d 1, 717 N.W.2d 729. Not every encounter with police is a seizure under the Fourth Amendment. Florida v. Bostick , 501 U.S. 429, 434 (1991). Courts have recognized two types of seizures: an investigatory or Terry stop and an arrest. County of Grant v. Vogt , 2014 WI 76, ¶¶27-28, 356 Wis. 2d 343, 850 N.W.2d 253 ; see Terry v. Ohio , 392 U.S. 1, 30 (1968). An investigatory stop typically entails only temporary questioning and is constitutional if police have a reasonable suspicion that a crime has been or is about to be committed. Young , 294 Wis. 2d 1, ¶20. An arrest is a more permanent seizure, often leading to a criminal prosecution, and is constitutional if police have probable cause to suspect that a crime has been committed. Id. , ¶22.
¶15 A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" United States v. Mendenhall , 446 U.S. 544, 552 (1980) (citation omitted). A person has been seized for constitutional purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554 ; see Vogt , 356 Wis. 2d 343, ¶30 (noting that our supreme court has adopted the Mendenhall test for determining whether a seizure took place).
¶16 Pittman argues that a reasonable person in his position would have believed he was no longer free to leave once the officers stepped out of their vehicle and approached him, with one of the officers moving to the north of where Pittman was standing so that he could not run away. The State, in contrast, asserts that Pittman was not seized until the police removed the gun from his sweatshirt. According to the State, the events leading to the seizure constituted a consensual encounter.
¶17 We reject Pittman's position and agree with the State that the seizure did not occur until police removed the gun from Pittman's sweatshirt. We point to the following circumstances, as found by the circuit court: the officers made a U-turn in their vehicle to talk to Pittman; neither the lights nor the siren were activated; the testifying officer saw a bulge outside of Pittman's sweatshirt and asked, from approximately fifteen feet away, whether Pittman had a gun; Pittman said no; the officer then saw the handle of the gun and took it from Pittman. Prior to the removal of the gun, these were not circumstances "so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave." See Vogt , 356 Wis. 2d 343, ¶24 (citation omitted).
¶18 To the extent that Pittman's argument hinges on the officer's testimony that he approached Pittman to the north of where he was standing, it is unpersuasive. The trajectory of the approach, without more, does not establish that a reasonable person would have believed he was not free to leave. See Young , 294 Wis. 2d 1, ¶37 ("If a reasonable person would have felt free to leave but the person at issue nonetheless remained in police presence, perhaps because of a desire to be cooperative, there is no seizure."). A seizure did not occur when the officers entered the gas station parking lot and approached Pittman.
¶19 Moreover, we disagree with Pittman's assertion that "[t]here is nothing in [his] statement that he was not possessing a firearm, despite the fact that officers could observe the firearm, that would lead to reasonable suspicion that Pittman illegally possessed a gun." After Pittman lied, the officer had reasonable suspicion that he was illegally possessing a gun. At that point, the officer was justified in seizing Pittman and frisking him for the weapon. See State v. McGill , 2000 WI 38, ¶22, 234 Wis. 2d 560, 609 N.W.2d 795 (explaining that protective frisks are justified when an officer has a reasonable suspicion that the suspect may be armed).
¶20 The circuit court properly denied Pittman's suppression motion.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.